Robert L. Sallander, Jr. (SBN 118352)
Dean C. Burnick (SBN 146914)
GREENAN, PEFFER, SALLANDER & LALLY LLP
Post Office Box 10
6111 Bollinger Canyon Road, Suite 500
San Ramon, California 94583
Telephone: (925) 866-1000
Facsimile:  (925) 830-8787

Attorneys for Plaintiff
Massachusetts Mutual Life Insurance Company

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MASSACHUSETTS MUTUAL LIFE INSURANCE COMPANY<br><br>Plaintiff,<br><br>vs.<br><br>LETANTIA B. BUSSELL, an individual, and THE UNITED STATES OF AMERICA, and DOES 1 through 20,<br><br>Defendants.<br><br>AND RELATED COUNTER-CLAIM | Case No.: CV 08-1041-R<br><br>**[Proposed]**<br>**FINDINGS OF UNCONTROVERTED**<br>**FACTS AND CONCLUSIONS OF LAW**<br><br>The Honorable Manuel Real<br>Date:  October 6, 2008<br>Time:  10:00 a.m.<br>Address:  312 N. Spring Street<br>Courtroom No. 8<br>Los Angeles, California |

Plaintiff Massachusetts Mutual Life Insurance Company's Motion for Summary Judgment came on for hearing before the Court on October 6, 2008.  Dean C. Burnick appeared on behalf of Plaintiff Massachusetts Mutual Life Insurance Company.  Defendant Letantia Bussell, appeared *pro se*.  Gavin Greene, Assistant U.S. Attorney appeared on behalf of Defendant the United States of America.

/ / /

/ / /

Based on the papers filed in this case, the arguments advanced at the hearing, and all other matters properly made part of the record, the Court makes the following Findings of Uncontroverted Facts and Conclusions of Law:

**STATEMENT OF UNCONTROVERTED FACTS**

1. Letantia B. Bussell ("Bussell") purchased Disability Income Policy No. 4684993 ("DI Policy") and Business Overhead Expense Policy No. 4684995 ("BOE Policy"), effective September 16, 1987, from Connecticut Mutual Life Insurance Company.

2. Connecticut Mutual Life Insurance Company merged with MassMutual, with MassMutual assuming the rights and obligations under all outstanding Connecticut Mutual policies, including Bussell's DI and BOE Policies.

3. The DI Policy states: "You're totally disabled if because of sickness or injury you can't do the main duties of your occupation. You must be under a doctor's care."

4. The DI Policy defines "occupation" to mean "Your regular occupation at the start of disability."

5. The DI Policy states: "You must be totally and/or partially disabled for the full waiting period. We'll pay the first monthly benefit one month after the waiting period ends."

6. The DI Policy defines "Waiting Period" to mean "the number of days immediately following the start of your disability. No benefits are provided during the waiting period. Your waiting period is shown on the Coverage Page."

7. The DI Policy states:
   You're residually disabled if because of sickness or injury:
   • You can do some, but not all of the main duties of your occupation.
   OR
   • You can work at your occupation no more than 4/5 of the hours worked before becoming disabled.

   In either case, you must be earning an income and have lost at least 1/5 of your predisability income for each month you make a claim for residual disability. Also you must be under a doctor's care. If you are residually disabled you are also considered partially disabled

8. The DI Policy provides that:

**Partial Disability Benefit.** Benefits will start after the partial disability waiting period. We'll pay the first monthly benefit 1 month after the waiting period ends. We'll pay benefits up to the 12th month following the start of your disability.
…

The partial disability benefit will be:
The amount of your benefit shown on the current Coverage Page of our policy.
1. We'll pay the benefit if you meet all of the following conditions:
- You've been totally disabled for 30 days.
- You've been totally and/or partially disabled for the rest of the waiting period shown on the current Coverage Page.
- Your total disability benefits, if they were payable, have ended.
- You're partially disabled, but not totally disabled.

OR

2. We'll pay you a benefit based on your loss of income as described in the "Total Disability Benefit" section of our policy. You must meet all of the following conditions:
- You've been totally and/or partially disabled for the waiting period shown on the current Coverage Page.
- You're partially disabled, but not totally disabled.
- You must show a loss of at least 1/5 of your predisability income.

9. As amended, the DI Policy provides:
The benefits under your policy and certain riders may be based on your loss of income. Your loss of income is your predisability income minus your current income from your occupation as defined in Part 1 of your policy.

10. The DI Policy defines "Income" to mean:
Gross earnings from any job or business. This doesn't include:
- Investment income,
- Rent,
- Royalties.
- Any amount which is deductible from gross income as a business expense for income tax purposes.

11. The DI Policy defines "Predisability Income" to mean "Average monthly income for the last 12 months before the start of disability, Or the average for the last 24 months, if greater."

12. The DI Policy defines "Current Income" to mean **"Income for the month that a benefit is claimed."**

13. The DI Policy defines "Loss of Income" to mean "Your predisability income minus your current income."

14. The Required Proof provision of the DI Policy provides:
**Required Proof.** Whether on our claim form or your claim letter, send proof of your disability and any proof of reduced income that may be required. Send it to our Home Office as soon as possible. Required proof must also be received within 90 days of each monthly benefit payment claimed. If it's not possible to send it within 90 days, send it as soon as reasonably possible. Your claim won't be reduced because of the delay. But we won't accept proof of loss later than 1 year after it was due. We'll make an exception if you weren't then competent to make the claim.

We may require from time to time that you be examined by doctors we choose. We'll pay the cost. We may also require from time to time, satisfactory proof of your income before and during the disability. This may include, but is not limited to, copies of your W-2 form and/or income tax returns.

15. The BOE Policy states:
You're totally disabled if because of sickness or injury you can't do the main duties of your occupation. And you must be under a doctor's care. You must be totally disabled for the full waiting period. We'll pay the first monthly benefit one month after the waiting period.

16. The BOE Policy defines "occupation" to mean "Your regular occupation at the start of disability."

17. The BOE Policy defines "Waiting Period" to mean "the number of days immediately following the start of your disability. No benefits are provided during the waiting period. Your waiting period is shown on the Coverage Page."

18. The BOE Policy states in relevant part:
**Total disability benefit – business overhead expense benefit.** Each monthly benefit we pay will either be equal to your share of the actual business overhead expenses, or be in the amount shown on the Coverage Page, whichever is less.

You will get benefits for as long as you are totally disabled, up to the maximum benefit period. If your actual expenses are less than the amount shown on the Coverage Page, we will extend benefits beyond the maximum benefit period. We will pay until the total benefit paid equals your monthly overhead expense benefit times your maximum benefit period. In no event, will we pay beyond the sixth month after the end of your maximum benefit period.
…

You won't get a larger benefit if you're disabled due to more than one cause.

19. The BOE Policy states:
   You're partially disabled if because of sickness or injury:
   - You can do some, but not all, of the duties of your occupation
     or
   - You can work at your occupation no more than 3/4 of the hours you worked before becoming disabled.
   In either case, you must be under a doctor's care.

20. The BOE Policy defines "Overhead expenses" to mean "Expenses you normally have in running your office or business, including rent, electricity, heat and water, telephone, interest payments on the business premises owned and used in running your business, cost of leasing equipment, laundry, employees' salaries (except as limited below), and depreciation."

21. The BOE Policy removes from the definition of "Overhead expenses" the following:

   salaries, fees or other compensation received by any family member, colleague or partner working for or with you, drawing accounts, any kind of expense which you didn't have in running your office or business immediately before becoming totally disabled, cost of goods for sale, additions to inventory, cost of tools, instruments or wares used in your profession or occupation, [and] mortgage principal payments. If overhead expenses are shared with one or more persons, the BOE Policy covers only your portion of the expenses.

22. The Required Proof clause of the BOE Policy provides:

   **Required proof.** Whether on our claim form or your claim letter, send proof of your disability and any proof of monthly overhead expenses that may be required. Send it to our Home Office as soon as possible. Required proof must also be received within 90 days of each monthly benefit payment claimed. If it's not possible to send it within 90 days, send it as soon as reasonably possible. Your claim won't be reduced because of the delay. But we won't accept proof of loss later than 1 year after it was due. We'll make an exception if you weren't then competent to make the claim.

   We may require from time to time that you be examined by doctors we choose. We'll pay the cost. We may also require from time to time, satisfactory proof of your expenses before and during disability.

23. Bussell placed MassMutual on notice of her claim for total disability benefits under her DI and BOE Policies in November 2005.

24. Bussell has never asserted a claim for partial or residual disability benefits under either policy.

Greenan,
Peffer,
Sallander &
Lally LLP

5

FINDINGS OF FACT AND CONCLUSIONS OF LAW          Case No.: CV 08-1041-R

25. On or about February 15, 2006, MassMutual received Bussell's Statement for Disability Benefits and Occupational Description forms, and an Attending Physician Statement.

26. During its claims investigation, MassMutual obtained medical records from Bussell's treaters, and consulted with members of its Medical Department and an independent physician about those medical records. Each medical consultation was designed to assist the claims examiner to understand the medical conditions raised by Bussell's claim.

27. In turn, the MassMutual Claims Department is responsible for assessing the claim and rendering a coverage determination based on all information developed.

28. MassMutual's claims investigation also sought to develop information supporting Bussell's claimed occupation on the date she claims her disability commenced, the substantial and material duties of that occupation, her capacity to perform those substantial and material duties at and after the date she claims to have become disabled, the average number of hours spent performing those substantial and material duties at and after the date she claims to have become disabled, her predisability income, monthly income, monthly loss of income and monthly overhead expenses.

29. As part of its claims investigation, MassMutual commissioned Claims Bureau USA Inc. to conduct an investigation that revealed that Bussell continues to practice dermatology, sells her own line of skin care products as part of her medical practice, offers non-medical services at her medical office, and holds or has held an ownership interest in numerous for-profit commercial enterprises.

30. During its claims investigation, MassMutual uncovered information that Bussell's right to practice medicine had been terminated by St. Johns Health Center in Santa Monica, and that her medical license was under challenge before the Board of Medical Examiners for violation of California's Medical Practices Act, for which a disciplinary action remains pending.

31. On June 15, 2006, MassMutual's Sr. Vocational Rehabilitation Consultant, Sharon Sullivan M.Ed CRC, published her Vocational Triage Response to assist the claims examiner in requesting information designed to identify and verify Bussell's occupation, and

1  the substantial and material duties of that occupation on the date she claims her disability
2  began.
3     32.  In October 2007, MassMutual hired Lisa Broering OTR/CHT, CAE, CEAS to
4  identify Bussell's occupation on the date she claims her disability commenced, the substantial
5  and material duties of that occupation, and her capacity to perform those duties.
6     33.  Bussell refused to meet or speak with Broering, and refused to permit
7  MassMutual to share her medical information with Broering.
8     34.  On December 20, 2007, Broering published her report responding to questions
9  presented to her by MassMutual concerning Bussell and dermatologists generally.  That report
10 also explained why Broering was unable to identify the substantial and material duties and
11 responsibilities of Bussell's regular occupation at or after the date she claims her total disability
12 commenced.
13    35.  Throughout its claims investigation, MassMutual regularly advised Bussell
14 concerning the way in which her DI and BOE Policies operate, and her proof of loss obligations
15 under them.
16    36.  Throughout its claims investigation, however, Bussell has argued that all
17 preconditions to total disability coverage under the DI and BOE Policies have been satisfied.
18    37.  Throughout its claims investigation, Bussell has also declined to meet or speak
19 with representatives of MassMutual, and refused for varying reasons to provide MassMutual
20 with the following requested information:
21 • CPT codes and other evidence of her treatment of patients for the periods January 1,
22   2005 to April 11, 2005, and June 1, 2005 to the present;
23 • A description of her treatment of patients since January 1, 2005;
24 • An explanation of any post-disability changes in her business;
25 • The identity of the doctors Bussell hired to attend to her patients as a result of her
26   disability;
27 • The names of others involved in the businesses in which she has an interest;
28 • The dates she was incarcerated;

Greenan,
Peffer,
Sallander &
Lally LLP

7

FINDINGS OF FACT AND CONCLUSIONS OF LAW                    Case No.:  CV 08-1041-R

- Who she hired to carry-on her medical practice while she was serving her prison sentence;
- Monthly statements showing all expenses of her businesses;
- Monthly statements showing her income from her businesses and other employers;
- The identity of all personnel/employees she has employed, and their corresponding monthly salaries or wages, from October 2005;
- Monthly profit and loss statements for her businesses, including gross salary and pension contribution information;
- Her business tax returns for calendar years 2001 through 2007; and
- Her personal tax returns for 2006 and 2007, and Federal W-2's for 2002 through 2007.

38. Despite its diligent efforts, during its claims investigation MassMutual was not provided with sufficient information to permit it to identify Bussell's occupation on the date of disability, the substantial and material duties of that occupation, Bussell's capacity to perform those occupational duties on and after the date Bussell claims to have become disabled, the length of time Bussell may have been unable to perform the substantial and material duties of her occupation, the average number of hours spent each month performing those occupational duties, or Bussell's predisability income, monthly loss of income and monthly overhead expenses.

39. On July 17, 2008, MassMutual propounded on Bussell its First Set of Requests for Admission, to which no objection or response was made. As a result, the following facts are deemed admitted and conclusively established:

- Bussell suffers from no sickness or injury that has rendered her unable to perform some, but less than all, of the substantial and material duties of her occupation on October 13, 2005, the date she claims her disability commenced;
- Bussell can work at her occupation greater than 4/5ths of the hours she worked before October 13, 2005;
- Bussell has been earning an income for each month she claims a right to benefits under her DI Policy;

- Bussell has lost less than 1/5 of her predisability income for each month she claims a right to benefits under her DI Policy;
- Bussell has been able to perform the substantial and material duties of her occupation during the 90 day waiting period of her DI Policy;
- Bussell has been able to perform the substantial and material duties of her occupation during the 30 day waiting period of her BOE Policy;
- Bussell has not provided MassMutual with the required proof for total disability coverage under her DI Policy;
- Bussell has not provided MassMutual with the required proof for partial or residual disability coverage under her DI Policy; and
- Bussell has not provided MassMutual with the required proof for coverage under her BOE Policy.

FED. R. CIV. P. 36(a)(3) and (b); *O'Campo v. Hardisty*, 264 F. 2d 621, 623-24 (9th Cir. 1958); *Cook v. Allstate Ins. Co.*, 337 F. Supp. 2d 1206, 1209-11 (C.D. Cal. 2004).

40. During deposition, and among other things, Bussell testified that: (a) She does not know the frequency of cosmetic procedures she performed on patients prior to her disability claims, and could not estimate how long on average it took to perform any cosmetic procedure; (b) Patient records with CPT codes similar to what she produced at deposition have been destroyed or stolen; (c) She was incorrect when she stated in her Occupational Description form submitted to MassMutual that she spent over 99% of her "40+" hour work week doing "Dermatologic Surgeries and Procedures," but that she spent over 99% of her time as a "Dermatologist and Dermatologic Surgeon;" (d) She did not know how much time she spent on average working from home, or the average number of days or hours she would normally be in her medical office; (e) There are no documents in existence that would indicate what her professional schedule was at or near October 13, 2005 because her medical office throws away appointment books and calendars at the end of each calendar year; (f) She does not know how many patients per-week on average she saw prior to October 13, 2005; (g) She does not know the number of times per-week, or how much time on average she spent per-week, performing

the procedures identified on her Brief Job Description attached to her Occupational Description form; (h) She does not know how many times per-week on average she performed surgical removal of skin cancers, and could not approximate or average how long each procedure took; (i) She does not know the number of times she performed biopsies of irregular lesions per week, and could not approximate the frequency or the amount of time it took on average to perform these procedures; (j) She has kept no records that demonstrate the substantial and material duties of her occupation on the date of disability, including documents describing her medical practice and the procedures she performed, and does not believe she has to produce any such documents; and that (k) She agrees MassMutual had a right to investigate her benefit claims under her DI and BOE policies.

41.     During deposition, and among other things, Bussell also declined to answer questions including, but not limited to, the following subject areas: (1) Who performed the procedures referenced on the redacted patient records she produced at deposition, and what the notations on those documents mean; (2) The identity, role and job duties of the physicians, physician assistants, registered nurses, employees and independent contractors who have worked at, or currently work at Bussell's medical office (Beverly Hills Dermatology Consultants); (3) The services Bussell's medical office provides patients and whether those services have changed since October 13, 2005; (4) The last time Bussell consulted with a patient or other physician concerning a patient's diagnosis or treatment options; (5) The extent to which Bussell supervised the work of physician's assistants and others who work at her medical office, and the extent to which she was responsible for human resource issues, before October 13, 2005; (6) Professional licenses and certifications held other than her medical license; (7) The administrative proceedings pending before the California Board of Medical Examiners challenging her medical license; (8) Other lawsuits in which she was a party, including her prior criminal convictions and incarceration; (9) The people Bussell hired and laid-off after her claimed disability commencement date; (10) Her monthly income and benefits earned from sources other than her medical office; (11) Whether family members are or have been employed at her medical office; and (12) The development, marketing and sale of

Greenan,
Peffer,
Sallander &
Lally LLP

FINDINGS OF FACT AND CONCLUSIONS OF LAW                     Case No.:  CV 08-1041-R

several products identified by Bussell as having been sold, and which are being sold, in Bussell's medical office.

42. At deposition, Bussell also could not identify any additional documents supporting her business overhead expense claim being provided to MassMutual during its claims investigation, other than what appears in the claim file produced by MassMutual.

43. The documents and information that MassMutual has been seeking were reasonably calculated to lead to information that would permit MassMutual to identify Bussell's occupation on the date of disability, the substantial and material duties of that occupation, Bussell's capacity to perform those occupational duties on and after the date Bussell claims to have become disabled, the length of time Bussell may have been unable to perform the substantial and material duties of her occupation on the date she claims her disability commenced, the average number of hours spent each month performing those occupational duties, and Bussell's predisability income, monthly loss of income and monthly overhead expenses.

44. In support of her Opposition to MassMutual's Motion for Summary Judgment or, in the Alternative, for Partial Summary Judgment, Bussell does not include any competent evidence or a Statement of Genuine Issues which may tend to demonstrate that a genuine issue of material fact is in dispute. As a result, the Court assumes that the material facts as claimed and adequately supported by MassMutual are admitted to exist without controversy, and that summary judgment in MassMutual's favor is appropriate as a matter of undisputed fact and law. FED. R. CIV. P. 56(e)(2); Local Rule 56-3.

## **CONCLUSIONS OF LAW**

1. Summary Judgment is appropriate when there is no general issue of material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56; *Tarin v. County of Los Angeles*, 123 F. 3d 1259, 1263 (9th Cir. 1997).

2. The moving party bears the initial burden of "informing the district court of the basis of its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes

FINDINGS OF FACT AND CONCLUSIONS OF LAW                              Case No.: CV 08-1041-R

demonstrate the absence of a genuine issue of material facts." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).

3. If the moving party meets its initial burden, the responsibility then shifts to the opposing party to show that a genuine issue of material fact exists. *Matsushita*, *supra*, 475 U.S. at 586. If no evidence is submitted by the opposing party in support of her opposition to a motion for summary judgment, the opposing party fails to demonstrate that there are any genuine issues of material fact in dispute and summary judgment should be granted. *Bias v. Moynihan*, 508 F. 3d 1212, 1219 (9th Cir. 2007) (rejecting argument that the Court must search the entire record to discover triable issues of fact on behalf of *pro se* party).

4. Whether an insured is entitled to insurance coverage is a question of law. *Waller v. Truck Ins. Exchange Co.*, 11 Cal. 4th 1, 18 (1995).

5. Factual disputes related to the underlying injury are of no consequence, and do not bar summary judgment, when the policy does not provide coverage. *Brodkin v. State Farm Fire & Cas. Co.*, 217 Cal. App. 3d 210, 217 (1989).

6. The disabled insured/claimant bears the burden of proving a right to policy benefits under a disability policy. *Wright v. Paul Revere Life Ins. Co.*, 291 F. Supp. 2d 1104, 1111 (C.D. Cal. 2003).

7. Total disability does not signify an absolute state of helplessness, but must render the insured unable to perform all substantial and material acts necessary to the prosecution of her business or occupation. *Erreca v. Western States Life Ins. Co.*, 19 Cal. 2d 388, 396 (1942); *Dym v. Provident Life and Acc. Ins. Co.*, 19 F. Supp. 2d 1147, 1150-51 (S.D. Cal. 1998); *see also*, *Bank of the West v. Superior Court*, 2 Cal. 4th 1254, 1265 (1992) (interpreting total and residual disability provisions "in context, with regard to its intended function in the policy.").

8. An insured is not totally disabled if she is physically and mentally capable of performing some, but not all, of her work connected with her employment, and is not entitled to total disability benefits merely because she is rendered unable to transact one or more of the

1  duties connected with her business. *Erreca*, *supra*, 19 Cal. 2d at 396; *McMackin v. Great*
2  *American Reserve Insurance*, 22 Cal. App. 3d 428, 437 (1971).

3        9.      California Insurance Code Section 10350.7 mandates that each disability policy
4  approved for use in California contain a Required Proof provision. The purpose of a Required
5  Proof provision generally, and in DI and BOE policies in issue, is to enable the insurer to form
6  an intelligent estimate concerning whether the claim comes within the terms of the policy, to
7  prevent fraud, and to enable the insurer to make an investigation to determine its rights and
8  liabilities. What amounts to reasonable proof depends upon the circumstances. *Culley v. New*
9  *York Life Ins. Co.*, 27 Cal. 2d 187, 192 (1945).

10        10.     A policyholder's failure to timely submit notice of a claim or proof of loss permits
11  a disability carrier to deny coverage if it has incurred actual prejudice as a result. *Cisneros v.*
12  *UNUM Life Ins. Co. of America*, 134 F. 3d 939, 942, 944, 947-48 (9th Cir. 1998); *Scherz v.*
13  *South Carolina Ins. Co.*, 112 F. Supp. 2d 1000, 1007-08 (C.D. Cal. 2000); *1231 Euclid*
14  *Homeowners Association v. State Farm Fire and Cas. Co.*, 135 Cal. App. 4th 1008, 1020-21
15  (2006); *Othman v. Globe Indemn. Co.*, 759 F. 2d 1458, 1460-62, 1465 (9th Cir. 1985).

16        11.     Every insurance contract implies a covenant of good faith and fair dealing which
17  essentially enjoins the insurer from doing anything to impair the insured's right to receive the
18  benefit for which he or she contracted. *Egan v. Mutual of Omaha Ins. Co.*, 24 Cal. 3d. 809, 818
19  (1979), *cert. denied*, 445 U.S. 912 (1980); *Love v. Fire Ins. Exchange*, 221 Cal. App. 3d 1136,
20  1153 (1990).

21        12.     To establish bad faith liability in a first party insurance case such as this, the
22  insured must show: (1) privity of contract; (2) policy benefits are due under the insurance
23  contract; and (3) the insurer withholding benefits either unreasonably or without proper cause.
24  *Buxbaum v. Aetna Life and Cas. Co.*, 103 Cal. App. 4th 434, 442 (2002).

25        13.     The insured bears the initial burden of proving the insurer's delay or denial of
26  benefits was "unreasonable" or "without proper cause." *Tomaselli v. Transamerica Ins. Co.*, 25
27  Cal. App. 4th 1269, 1280-81 (1994). If satisfied, the burden then shifts to the insurer to present
28  evidence negating unreasonableness. *Id*.

Greenan,
Peffer,
Sallander &
Lally LLP

13

14. Under California's Genuine Dispute Doctrine, a court can rule as a matter of law that the insured acted reasonably, and that no cause of action for insurance bad faith can lie, where there is a legitimate dispute over coverage, whether factual or legal. *Chateau Chamberay Homeowners Assoc. v. Associated International Ins. Co.*, 90 Cal. App. 4th 335, 346 (2001); *Tomaselli v. Transamerica Ins. Co.*, *supra*, 25 Cal. App. 4th 1269, 1280-81 (1994); *Helus v. The Equitable Life Assurance Society of America*, 309 F. Supp. 2d 1170, 1184 (N.D. Cal 2004).

15. To prevail on her claim for total disability benefits under the DI Policy, Bussell must first present MassMutual with proof that (1) she suffers from a sickness or injury; (2) her sickness or injury renders her unable to perform the substantial and material duties of her occupation on the date she claims her disability commenced; (3) her inability to perform those occupational duties has lasted for the 90 day waiting period; and (4) she is under a doctor's care.

16. To prevail on a claim for partial or residual disability benefits under the DI Policy, Bussell must first present MassMutual with proof that (1) she suffers from a sickness or injury; (2) she can do some, but not all of the main duties of her occupation or that she can work at her occupation no more than 4/5 of the hours worked before becoming disabled; (3) her decreased ability to perform those occupational duties has lasted for the 90 day waiting period; (4) she is earning an income and has lost at least 1/5 of her predisability income for each month she makes a claim; and (5) is under a doctor's care.

17. Despite having had ample opportunity, Bussell has failed to furnish the proof required under the Required Proof provision of the DI policy, and has breached that contract provision as a result. Bussell has also failed to meet her burden of demonstrating by undisputed facts that she has satisfied all preconditions required for a finding of total disability, partial disability or residual disability under the DI Policy. In turn, Bussell's breach of the Required Proof provision of the DI policy and failure of proof has actually and substantially prejudiced MassMutual from developing the information it reasonably requires to identify and assess her occupation on the date she claims her disability began, the substantial and material duties of that occupation, her capacity to perform the substantial and material duties of her regular occupation on or after the date she claims to have become disabled, the length of time she may have been

14

1  unable to perform the substantial and material duties of her regular occupation, the average
2  number of hours spent each month performing the substantial and material duties of her
3  occupation either before or after the date she claims to have become disabled, her predisability
4  income and monthly loss of income.  As a result, no right to benefits exists or can arise under the
5  MassMutual DI policy from Bussell's claim.

6        18.    To prevail on her claim for total disability benefits under the BOE Policy, Bussell
7  must first present MassMutual with proof that (1) she suffers from a sickness or injury; (2) her
8  sickness or injury has rendered her unable to perform the substantial and material duties of her
9  occupation on the date she claims the disability commenced; (3) that her inability to perform
10 those occupational duties has lasted for the 30 day waiting period under the BOE Policy; and (4)
11 she is under a doctor's care.  Once met, Bussell would be entitled to a monthly benefit equal to
12 her share of actual overhead expenses, or the amount shown in the Coverage Page, whichever is
13 less.

14       19.    To prevail on a claim for partial disability benefits under the BOE Policy, Bussell
15 must first present MassMutual with proof that (1) she suffers from a sickness or injury; (2) she
16 can do some, but not all of the substantial and material duties of her occupation or that she can
17 work at her occupation no more than 3/4 of the hours worked before becoming disabled; (3) her
18 decreased ability to perform the substantial and material duties of her occupation has lasted for
19 the 90 day waiting period; and (4) is under a doctor's care.  Once met, Bussell's partial disability
20 benefit would be equal to one-half the amount of the total disability benefit.

21       20.    Despite having had ample opportunity, Bussell has also failed to furnish the proof
22 required under the Required Proof provision of the BOE policy, and has breached that contract
23 provision as a result.  Like the treatment of her claim under her DI policy, Bussell has also failed
24 to meet her burden of demonstrating by undisputed facts that she has satisfied all preconditions
25 required for a finding of total disability or partial disability benefits under the BOE Policy.  In
26 turn, Bussell's breach of the Required Proof provision of the BOE policy and failure of proof has
27 actually and substantially prejudiced MassMutual from developing the information it reasonably
28 requires to identify and assess her occupation on the date she claims her disability began, the

1 substantial and material duties of that occupation, her capacity to perform the substantial and material duties of her regular occupation on or after the date she claims to have become disabled, the length of time she may have been unable to perform the substantial and material duties of her regular occupation, the average number of hours spent each month performing the substantial and material duties of her occupation either before and after the date she claims to have become disabled, her predisability income, monthly loss of income and monthly business overhead expenses. As a result, no right to benefits exists or can arise under the MassMutual BOE policy from Bussell's claim.

21. Based on the undisputed evidence outlined above, the judicial admissions of Bussell and her failure to submit competent evidence in support of her opposition to MassMutual's Motion for Summary Judgment, and as a matter of undisputed fact and law, the Court rules that MassMutual is entitled to judgment as a matter of law on Bussell's Counterclaim cause of action for breach of contract because no coverage obligation has arisen or can arise under Bussell's policies for the claims asserted. *Celotex Corp. v. Catrett*, *supra*, 477 U.S. at 323, 326; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp., supra*, 475 U.S. at 587; *Wright v. Paul Revere Life Ins. Co.*, *supra*, 291 F. Supp. 2d at 1111; *Bias v. Moynihan*, *supra*, 508 F. 3d at 1219.

22. Because Bussell is unable to demonstrate that MassMutual has breached either the DI Policy or the BOE Policy, and acted unreasonably, the Court holds that Bussell also cannot sustain her Counterclaim cause of action for breach of the implied covenant of good faith and fair dealing in either of her policies. Judgment is therefore also appropriate in favor of MassMutual on Bussell's Counterclaim cause of action for insurance bad faith. *1231 Euclid Homeowners Ass'n v. State Farm Fire and Cas. Co.*, 135 Cal. App. 4th 1008, 1021 (2006).

23. Moreover, the undisputed material facts demonstrate legitimate disputes existing during the claims investigation over MassMutual's contract liability under the DI and BOE Policies, including:

- Whether Bussell's sicknesses or injuries have rendered her unable to perform some or all of the substantial and material duties of her occupation on the date of disability (October 13, 2005);

1
2
- Whether Bussell is unable to perform the substantial and material occupational duties for the required waiting periods under the DI Policy or the BOE Policy;

3
4
5
- Whether, under the partial/residual coverage parts of the DI Policy, Bussell can work at her regular occupation no more than 4/5 of the hours worked, is earning an income and has suffered a loss of at least 1/5 of her predisability income each month;

6
7
- Whether MassMutual is obligated under the DI Policy to accept any proof of loss later than 1 year after it became due;

8
- Whether MassMutual is obligated to pay future contract benefits;

9
10
11
12
- Whether, under the partial disability coverage part of the BOE Policy, Bussell can work at her regular occupation no more than 3/4 of the hours worked before becoming disabled, and the extent to which Bussell has incurred actual overhead expenses for each month coverage is sought; and

13
- The extent of Bussell's monthly overhead expenses.

14      24.     These legitimate disputes of fact and law over Bussell's right to benefits under the
15 DI Policy and the BOE Policy form a separate, independent basis upon which to enter judgment
16 in MassMutual's favor on Bussell's Counterclaim cause of action for insurance bad faith.
17 *Chateau Chamberay Homeowners Assoc. v. Associated International Ins. Co.*, 90 Cal. App. 4th
18 335, 346 (2001); *Tomaselli v. Transamerica Ins. Co.*, *supra*, 25 Cal. App. 4th 1269, 1280-81
19 (1994); *Helus v. The Equitable Life Assurance Society of America*, 309 F. Supp. 2d 1170, 1184
20 (N.D. Cal 2004).

22 DATED: __November 03, 2008___         _____
                                        HONORABLE MANUEL L. REAL
23                                      United States District Court Judge

Greenan,
Peffer,
Sallander &
Lally LLP

17

FINDINGS OF FACT AND CONCLUSIONS OF LAW                Case No.: CV 08-1041-R

1  Presented by:
   Dean C. Burnick (SBN 146914)
2  GREENAN, PEFFER, SALLANDER & LALLY LLP
   Post Office Box 10
3  6111 Bollinger Canyon Road, Suite 500
   San Ramon, California 94583
4  Telephone: (925) 866-1000
   Facsimile:  (925) 830-8787
5
   Attorneys for Plaintiff
6  Massachusetts Mutual Life Insurance Company

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28